# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------- x
In re:                                              :   Chapter 15
                                                    :
GOLI NUTRITION INC., et al.,[1]                     :   Case No. ~~24-_____~~ 24-10438
                                                    :   (~~____~~ LSS)
            Debtors in a Foreign Proceeding.        :
                                                    :   ~~Joint Administration~~
                                                    :   ~~Requested~~ Jointly Administered
---------------------------------------------------------- x   Ref. Nos. 7 & 53
```

## ORDER ~~(I)~~ RECOGNIZING AND ENFORCING ~~(A)~~ THE RVO AND ~~(B) THE ATOS SALE ORDER, (II) APPROVING THE SALE OF THE DEBTORS' INTERESTS AND ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, AND (III)~~ GRANTING RELATED RELIEF

Upon consideration of the motion to approve, among other things, the RVO [Docket No. 7](the "Motion")[22] filed by Deloitte Restructuring Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Goli Nutrition Inc., a company incorporated in Québec, Canada ("Goli Canada"), and Goli Nutrition Inc., a company incorporated in Delaware ("Goli US," and, together with Goli Canada, the "Debtors") ~~, pursuant to sections 105(a), 363, 365, 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, for entry of an order (this "Order"): (a) recognizing and enforcing (i) the RVO, attached hereto as Exhibit 1 and (ii) the Atos Sale Order, attached hereto as Exhibit 2; (b) approving, under section 363 of the Bankruptcy Code, the sale of the Subscribed Shares to~~

---

[1] The Debtors in these Chapter 15 cases, ~~along with the last four digits of each Debtor's federal identification number,~~ are: Goli Canada (as defined herein), ~~federal tax identification number 732063086RC0002,~~ and the last 4 digits of its Canadian business number is 0002; and Goli US (as defined herein), ~~and the last 4 digits of its~~ federal tax identification number ~~[____]~~ is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

[22] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

~~139294242.7~~201040264.6

the Purchaser, free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities, as defined in the RVO) in accordance with the RVO; (c) approving, under section 363 of the Bankruptcy Code, the sale of the Atos Equipment by the Agent free and clear of all liens, claims, encumbrances, and other interests in accordance with the Agency Agreement; and (d) granting such other relief as the Court deems just and proper, all as more fully set forth in the Motion; and upon consideration of the Verified Petition and, the Zucker Declaration;, *the Petitioner's Supplement in Support of Motion for Entry of an Order (I) Recognizing and Enforcing the RVO and the ATOS Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 53] (the "Supplemental Brief"), and the *Supplemental Declaration of Noah Zucker in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief, (B) Motion for Provisional Relief, and (C) Motion for Order Enforcing CCAA Vesting Orders* dated April 11, 2024 [Docket No. 56] and the Declaration of Noah Zucker dated April 13, 2024 {Docket No. 67] (collectively, the "Supplemental Zucker Declarations"); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 109 and 1501; and venue being proper before this Court pursuant to § 1410; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and adequate and sufficient notice of the filing of the Motion having been given by the Petitioner; and it appearing that the relief requested in the Motion is necessary and beneficial to the Debtors and the Petitioner; and, if deemed necessary, this Court having held a hearing (the "Hearing") to consider the relief requested in the Motion; and there being no objections or other responses filed that have not been overruled,

2

withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      This Court entered the Recognition Order [Docket No. ____] on ~~March~~April __, 2024, and has found that the Debtors have satisfied the requirements of, among others, sections 101(23) and (24), 1502(4), 1504, 1509, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code.  All such findings by this Court are hereby incorporated by reference herein and such Recognition Order shall continue in effect in all respects except to the extent this Order directly modifies or directly contradicts such Recognition Order.

B.      On ~~March ___~~April 9, 2024, the Canadian Court entered the RVO, approving, among other things, the RVO transaction and all related documents, and ~~adding~~the addition of Residual Co. as an applicant in the ~~CCAA proceedings and removing~~Canadian Proceedings and the removal of Goli Canada as an applicant in the ~~CCAA~~Canadian Proceedings; ordering Goli Canada to issue the Subscribed Shares, and vesting in the Purchaser all right, title and interest in and to the Subscribed Shares, free and clear of any encumbrances; ordering Goli Canada to redeem and cancel the Legacy Equity Interests (as defined in the RVO) without any payment or other consideration; and approving the Pre-Closing Reorganization (as defined in the RVO) and vesting out of Goli Canada certain excluded assets, contracts and liabilities and discharging all encumbrances against Goli Canada other than certain permitted encumbrances.~~.~~

~~C. On March ___ 2024, the Canadian Court entered the Atos Sale Order, approving, among other things, the Debtors' entry into the Agency Agreement and the sale of the Atos Equipment in accordance therewith.~~

C. ~~D.~~ Based on the affidavits of service filed with, and the representations made to, this Court: (i) notice of the Motion, the Hearing, ~~if necessary,~~ and the ~~CCAA Vesting Orders~~RVO was proper, timely, adequate, and sufficient under the circumstances of these ~~chapter~~Chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (ii) no other or further notice of the Motion, the ~~CCAA Vesting Orders~~RVO, or the entry of this Order is necessary or shall be required.

D. ~~E.~~ This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E. ~~F.~~ The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policies of the United States, is warranted pursuant to sections 105(a), ~~363(b), (f), (m) and (n), 365,~~ 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

F. ~~G.~~ Based on the information contained in the Motion, the Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, ~~if necessary~~, the Debtors, with the consent of and in consultation with the Lenders, conducted an extensive marketing and sales process prior to the commencement of the ~~CCAA~~Canadian Proceedings with respect to the Debtors' business and their assets, ~~including the Atos Equipment,~~ and such process was non-collusive, duly noticed, and provided a reasonable opportunity for potential buyers to make any offer. The Petitioner, the Debtors and the Lenders, whose collateral is the subject to the ~~sale transactions~~Sale Transactions, support RVO transaction, including the disposition of ~~(i)~~ the Subscribed Shares pursuant to the Subscription

Agreement in connection with the RVO transaction, and (ii) the Atos Equipment pursuant to the Agency Agreement and the liquidation process that will be conducted by the Agent thereunder. As such, it is appropriate that the Subscribed Shares be issued to the Purchaser on the terms and subject to the conditions set forth in the Subscription Agreement and that the Atos Equipment be sold on the terms and subject to the conditions set forth in the Agency Agreement.

G.   H.   Based on information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, if necessary, the relief granted herein relates to assets and interests that, under the laws of the United States, should be administered in the Canadian Proceedings.

H.   I. The Based on information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, the Debtors' performance under the Subscription Agreement and the Agency Agreement and related agreements: (i) constitute a sound and reasonable exercise of the Debtors' business judgment; (ii) provide value and are beneficial to the Debtors and areis in the best interests of the Debtors;, their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  The consideration provided by the Purchaser for the Subscribed Shares under the Subscription Agreement and the consideration to be provided by the Purchaser of the Atos Equipment to be sold in accordance with the Agency Agreement was the highest and best offer providing a greater recovery than any available alternative and constitutesconstitute fair consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Avoidance Transaction Act, and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

139294242.7201040264.6
CAN_DMS: \1004056029

J. The transactions implemented pursuant to the Subscription Agreement do not amount to a consolidation, merger, or *de facto* merger of the Purchaser with any of the Debtors. Likewise, the transactions implemented pursuant to the Agency Agreement do not amount to a consolidation, merger, or *de facto* merger of the Agent and/or any subsequent purchaser of the Atos Equipment with any of the Debtors.

I. K. Time is of the essence in consummating the transactions implemented pursuant to the Subscription Agreement and the Agency Agreement. To maximize the value of the Subscribed Shares and the Atos Equipment, it is essential that the pertinent transactions occur and be recognized and enforced in the United States promptly. The Petitioner, on behalf of the Debtors, has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval implementation and consummation of such transactions. Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rule 6004(h), and accordingly, the transactions contemplated by the Subscription Agreement and Agency Agreement and related agreements can be closed as soon as reasonably practicable upon entry of this Order.

J. L. Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the other pleadings and documents filed in these chapter 15 cases, and the record made at any hearing on the Motion, if necessary Hearing, the Subscription Agreement and Agency Agreement and each of the transactions contemplated thereby were was negotiated, proposed, and entered into by the Debtors and the Purchaser and the Agent, as applicable, in good faith, without collusion, and from arm's-length bargaining positions. The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections

6

afforded thereby.   None of the Debtors, the Petitioner, or the Purchaser, has engaged in any conduct that would cause or permit the Subscription Agreement or the consummation of the transactions contemplated thereby to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

K.   M. The Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the Subscription Agreement and Agency Agreement were was not entered into for the purpose of hindering, delaying, or defrauding any present or future creditors of the Debtors.

N. The Debtors may sell and transfer the Subscribed Shares and the Atos Equipment free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances and other interests of any kind or nature whatsoever against the Debtors, the Subscribed Shares, the Atos Equipment, other than the Permitted Encumbrances and Retained Liabilities (each as defined in the RVO and the Atos Sale Order, as applicable ), because with respect to each creditor asserting any liens, claims, encumbrances, and other interests, one or more of the standards set forth in section 363(f)(l)–(5) of the Bankruptcy Code has been satisfied.   Each creditor that did not object to the Motion is deemed to have consented to the sale of the Subscribed Shares and the Atos Equipment free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities, each as defined in the RVO and the Atos Sale Order, as applicable) pursuant to section 363(f)(2) of the Bankruptcy Code.

O. The total consideration to be provided under the Subscription Agreement reflects the reliance of the Purchaser on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Subscribed Shares, free and clear of all

7

~~liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO). Likewise, the total consideration to be provided under the Agency Agreement reflects the reliance of the Agent on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with authority to possess and sell the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the Atos Sale Order).~~

<u>L.</u>  ~~P. The sale of the Subscribed Shares to~~<u>In accordance with the RVO,</u> the Purchaser will ~~be a legal, valid, and effective sale of~~<u>acquire</u> the Subscribed ~~Shares,~~<u>Share</u> and will ~~vest the Purchaser~~<u>be vested</u> with all rights, title, and interests in and to the Subscribed Shares, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

~~Q. The sale of the Atos Equipment in accordance with the Agency Agreement will be a legal, valid, and effective sale of the Atos Equipment, and will vest any purchaser with all rights, title, and interests in and to the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests.~~

<u>M.</u>  ~~R. The~~<u>Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the</u> Petitioner and the Debtors, as appropriate: (i) have full power and authority to execute the Subscription Agreement and ~~the Agency Agreement and~~ all other documents contemplated thereby; (ii) have all the power and authority necessary to consummate the transactions contemplated by the Subscription Agreement ~~and/or the Agency Agreement~~; and (iii) upon entry of this Order, other than any consents identified in the <u>RVO and</u> Subscription ~~Agreement and/or Agency~~ Agreement, need no consent or approval from any other person or governmental unit to

8

consummate the transactions contemplated thereby.  Such transactions have been duly and validly authorized by all necessary corporate action of the Debtors.

N.    ~~S. The~~Pursuant to the RVO, the Subscription Agreement is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable pursuant to its terms. The Subscription Agreement, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon the Debtors and the Petitioner in these chapter 15 cases and shall not be subject to rejection or avoidance by the foregoing parties or any other Person (as defined in section 101(41) of the Bankruptcy Code).

~~T. The Agency Agreement is a valid and binding contract between the Debtors and the Agent and shall be enforceable pursuant to its terms.  The Agency Agreement, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon the Debtors and the Petitioner in these chapter 15 cases and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.~~

O.    ~~U. The~~Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the Purchaser would not have entered into the Subscription Agreement and would not consummate the ~~purchase of the Subscribed Shares and the~~ related transactions, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if ~~the sale of~~Purchaser did not, in accordance with the RVO, acquire the Subscribed Shares ~~to the Purchaser was not~~ free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities as defined in the ~~CCAA~~ RVO), or if the Purchaser would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any

9

other interest, including, as applicable, certain liabilities related to the Subscribed Shares that will not be assumed by the Purchaser, as described in the Subscription Agreement.

~~V. The Agent would not have entered into the Agency Agreement and agree to undertake the liquidation of the Atos Equipment, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if it, on behalf of the Debtors, was not permitted to sell and transfer the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities as defined in the Atos Sale Order), or if the Agent would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any other interest, including, as applicable, certain liabilities related to the Atos Equipment that will not be assumed, as described in the Agency Agreement.~~

~~W. A sale of the Subscribed Shares and the Atos Equipment other than free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances or Retained Liabilities as defined in the RVO or the Atos Sale Order, as applicable) would yield substantially less value than the sale of the Subscribed Shares pursuant to the Subscription Agreement or the Atos Equipment pursuant to the Agency Agreement, respectively; thus, the sale free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities as defined in the RVO), in addition to all of the relief provided herein, is in the best interests of the Debtors, their creditors, and other parties in interest.~~

P. ~~X.~~ The interests of the Debtors' creditors in the United States are sufficiently protected.  The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policies of the United States, and warranted pursuant to sections 1521(b) and 1522 of the Bankruptcy Code.

10

Q.    ~~Y.~~ The legal and factual bases set forth in the Motion and at the Hearing~~, if necessary,~~ establish just cause for the relief granted herein.

R.    ~~Z.~~ Any and all findings of fact and conclusions of law announced by this Court at the Hearing are incorporated herein.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted as set forth herein.

2.    All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

**Recognition and Enforcement of the RVO**

3.    The RVO, a copy of which is annexed hereto as **Exhibit 1**, and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized, enforced, and given full force and effect in the United States in their entirety.

~~4. The Subscription Agreement and the transactions contemplated thereunder, including, for the avoidance of doubt, the sale of the Subscribed Shares and the transfers of the Subscribed Shares on the terms set forth in the Subscription Agreement and the RVO, including all transactions contemplated thereunder, this Order, including all transactions contemplated hereunder, and all of the terms and conditions of each of the foregoing are hereby approved and authorized pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code.~~   The failure specifically to refer to or include any particular provision of the

11

Subscription Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Subscription Agreement and the transactions contemplated thereunder, be ~~authorized and approved~~fully recognized, enforced, and given full force and effect in the United States in their entirety.

4. 5. Pursuant to sections 105, ~~363, 365,~~ 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the RVO and this Order, the Debtors, the Purchaser, and the Petitioner (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the transactions contemplated by the Subscription Agreement, including the sale of the Subscribed Shares to the Purchaser, in accordance with the Subscription Agreement, the RVO, and this Order; (b) distribute proceeds of the Subscription Agreement in accordance with and as authorized therein; ~~and~~ (c) issue the Monitor's certificate in the form attached as Schedule A to Goli US and the Purchaser (the "Certificate"), and (d) perform, consummate, implement, and close fully the transactions contemplated by the Subscription Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Subscription Agreement and the transactions contemplated thereunder and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Subscription Agreement, all without further order of the Court, and are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents on behalf of such Person (as defined in section 101(41) of the Bankruptcy Code) with respect to the Subscribed Shares that are necessary or appropriate to effectuate the Subscription Agreement and the transactions contemplated thereunder, any related agreements, the RVO, and this Order, including amended and restated certificates or articles of incorporation and by-laws or

139294242.7201040264.6
CAN_DMS: \1004056029

certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors or the Purchaser may determine are necessary or appropriate, and are hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of the RVO, this Order or the Subscription Agreement, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests against the Subscribed Shares.  The RVO and this Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

### ~~Transfer of the Subscribed Shares Free and Clear ³~~

5.     ~~6.~~ Pursuant to sections 105(a), ~~363, 365,~~ 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, and in accordance with and subject to the RVO and Subscription Agreement, on the Closing Date, the Subscribed Shares shall be transferred and absolutely vest in the Purchaser, ~~in accordance with RVO and the Subscription Agreement,~~ without further instrument of transfer or assignment, and such transfer shall: (a) be a legal, valid, binding, and effective transfer of the Subscribed Shares to the Purchaser; (b) vest the Purchaser with all rights, title, and interests in the Subscribed Shares; and (c) be free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

---

³   ~~Capitalized terms used in this section but not defined elsewhere in this Order shall have the meanings ascribed to such terms in the RVO.~~

13

6.    7. Pursuant to sections 105(a), 363(f), 365, 1501, 1507, 1520, 1521, 1525 and 1527 of the Bankruptcy Code, and in accordance with and subject to the RVO and Subscription Agreement, upon the closing of the transaction contemplated by the Subscription Agreement, except with respect to solely Permitted Encumbrances and Retained Liabilities (as defined in the RVO): (a) no holder of a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets shall interfere, and each and every such holder is enjoined from interfering with the Purchaser's rights and title to or use and enjoyment of the Subscribed Shares; and (b) the sale of the Subscribed Shares, the Subscription Agreement, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof.  All Persons holding a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest against the Subscribed Shares, the Purchaser, or any of its members, and their respective affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, successors, and assigns from and after closing of the transactions contemplated by the Subscription Agreement.

8. Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the sale of the Subscribed Shares to the Purchaser.  Effective as of the Closing Date, the RVO and this Order shall constitute for any and all purposes a full and complete conveyance and transfer of the Subscribed Shares to the Purchaser free and clear of all liens, claims, encumbrances, and

14

other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

9. This Order shall be effective as a determination that, as of the Closing Date, (a) all liens, claims, encumbrances, and other interests against or in the Debtors and/or their assets, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO) have been unconditionally released, discharged, and terminated as to the Purchaser and the Subscribed Shares, and that the conveyances and transfers described herein have been effected, (b) no creditors of Residual Co. shall have any claim upon, cause of action against, or interest in, the Subscribed Shares or the Purchaser (as to the Purchaser, solely in connection with or with respect to the Debtors) as of the Closing Date, and (c) such Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Subscription Agreement and effect the discharge of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances (as defined in the RVO) pursuant to this Order and the RVO, and not impose any fee, charge, or tax in connection therewith.

10. The Purchaser shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor, to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into

any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.   Without limiting the generality of the foregoing, except as otherwise provided in the Subscription Agreement, the RVO, this Order, and/or any other order of the Canadian Court, the conveyance of the Debtors' rights, title, and interest in the Purchased Assets to the Purchaser under the Subscription Agreement shall not result in the Purchaser having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (b) obligation under any of the Debtors' labor or employment agreements; (c) of the Debtors' mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtors and any non-debtor subsidiary or affiliate; (e) of the Debtors' pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs; (f) of the Debtors' other employee, workers' compensation, occupational disease, unemployment, or temporary disability related claims, including, without limitation, claims that might arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988; (vii) the Age Discrimination and Employee Act of 1976 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, (xii) or any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state, or other tax liabilities, U.S. or foreign pension liabilities, or

liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 15 Cases, whether imposed by agreement, understanding, law, equity, or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the time of Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates.

11. The transaction contemplated by the Subscription Agreement, including the purchase of the Subscribed Shares, is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorizations provided herein shall neither affect the validity of the Subscription Agreement nor the transfer of the Subscribed Shares to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, unless such authorization is duly stayed before the closing of the transactions contemplated by the Subscription Agreement pending such appeal.

12. None of the Debtors or the Purchaser, has engaged in any conduct that would cause or permit the Subscription Agreement or the Agency Agreement, as applicable, to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

7.     13. The terms and provisions of the Subscription Agreement, the RVO, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, the Petitioner, the Debtors' creditors, and all other parties in interest, and any

successors of the Debtors, the Purchaser, the Petitioner, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

8. ~~14.~~ Subject to the terms and conditions of the RVO, the Subscription Agreement and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment, or supplement does not materially change the terms of such agreements, documents, or other instruments and is otherwise in accordance with the terms of the RVO.

9. ~~15. Paragraphs~~ The provisions of this Order and the Subscription Agreement are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this Order and the RVO, on the one hand, and the Subscription Agreement, on the other, this Order and the RVO shall govern.

~~**Recognition and Enforcement of the Atos Sale Order**~~

~~16. The Atos Sale Order and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized and given full force and effect in the United States in their entirety.~~

~~139294242.7~~201040264.6
~~CAN_DMS: \1004056029~~

17. The Agency Agreement and the transactions contemplated thereunder, including, for the avoidance of doubt, the sale of the Atos Equipment and the transfer of the Atos Equipment, on the terms set forth in the Agency Agreement and the Atos Sale Order, including all transactions contemplated thereunder, this Order, including all transactions contemplated hereunder, and all of the terms and conditions of each of the foregoing are hereby approved and authorized pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code.  The failure specifically to include any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agency Agreement and the transactions contemplated thereunder, be authorized and approved in their entirety.

18. Pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the Atos Sale Order, and this Order, the Agent, the Debtors, and the Petitioner (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the transactions contemplated by the Agency Agreement, including the sale of the Atos Equipment in accordance with the Agency Agreement, the Atos Sale Order, and this Order; and (b) perform, consummate, implement, and close fully the transactions contemplated by the Agency Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agency Agreement and the transactions contemplated thereunder and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Agency Agreement, all without further order of the Court, and are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents on behalf of such Person with respect to the Atos Equipment that

19

are necessary or appropriate to effectuate the Agency Agreement and the transactions contemplated thereunder, any related agreements, the Atos Sale Order, and this Order.

**Transfer of the Atos Equipment Free and Clear [4]**

19.   Pursuant to sections 105(a), 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, upon the closing of the transactions contemplated by the Agency Agreement except with respect to solely Permitted Encumbrances and Retained Liabilities (as defined in the Atos Sale Order): (a) no holder of a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets shall interfere, and each and every such holder is enjoined from interfering with the Agent's right to sell the Atos Equipment and/or any subsequent purchaser's rights and title to or use and enjoyment of the Atos Equipment; and (b) the sale of the Atos Equipment, the Agency Agreement, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof.   All Persons holding a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest against the Atos Equipment, the Agent (or any subsequent purchaser of the Atos Equipment pursuant to the Agency Agreement), or any of its members, and their respective affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, successors, and assigns from and after closing of the transactions contemplated by the Agency Agreement.

---

[4]   Capitalized terms used in this section but not defined elsewhere in this Order shall have the meanings ascribed to such terms in the Atos Sale Order.

20. Upon the closing of the transactions contemplated by the Agency Agreement, the sale of the Atos Equipment by the Agent to a purchaser pursuant to the terms of the Agency Agreement and the Atos Sale Order shall: (a) be a legal, valid, binding and effective transfer of the Atos Equipment to such purchaser; (b) vest the purchaser with all rights, title, and interests in the Atos Equipment; and (c) be free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the Atos Sale Order).

21. Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the sale of the Atos Equipment.

22. In accordance with the Atos Sale Order, as security for all obligations of GOLI Canada to the Agent under or in connection with the Agency Agreement, the Agent is granted a first priority security lien in the Atos Equipment and all proceeds thereof including all proceeds from sales of the Atos Equipment in accordance with the Agency Agreement.

23. This Order shall be effective as a determination that, as of the closing of the transactions contemplated by the Agency Agreement, (a) all liens, claims, encumbrances, and other interests against or in the Atos Equipment, other than the Permitted Encumbrances and Retained Liabilities (as defined in the Atos Sale Order) have been unconditionally released, discharged, and terminated as to the Atos Equipment, and that the conveyances and transfers described herein have been effected, (b) no creditors of Residual Co. shall have any claim upon, cause of action against, or interest in, the Atos Equipment, and (c) such Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title

139294242.7201040264.6

CAN_DMS: \1004056029

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agency Agreement and effect the discharge of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances (as defined in the Atos Sale Order) pursuant to this Order and the Atos Sale Order, and not impose any fee, charge, or tax in connection therewith.

24. The Agent shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor, to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors. [Without limiting the generality of the foregoing, except as otherwise provided in the ATOS Sale Order, this Order, and/or any other order of the Canadian Court, the conveyance of the Debtors' rights, title, and interest in the Atos Equipment to a purchaser under the Agency Agreement shall not result in such purchaser having any liability or responsibility whatsoever for any: (a) Interest, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (b) obligation under any of the Debtors' labor or employment agreements; (c) of the Debtors' mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtors and any non-debtor subsidiary or affiliate; (e) of the Debtors' pension, welfare, compensation, or other employee benefit plans,

22

agreements, practices, and programs; (f) of the Debtors' other employee, workers' compensation, occupational disease, unemployment, or temporary disability related claims, including, without limitation, claims that might arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988; (vii) the Age Discrimination and Employee Act of 1976 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, (xii) or any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state, or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 15 Cases, whether imposed by agreement, understanding, law, equity, or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the time of Closing or any taxes in connection with, or in any way relating to

23

the cancellation of debt of the Debtors or their affiliates.] **[NTD: consider striking the bracketed language that may be overkill]**

25. All Persons that are currently in possession of some or all of the Atos Equipment located in the United States or that are otherwise subject to the jurisdiction of this Court are hereby directed to surrender possession of such Atos Equipment to the Debtors or the Agent.

26. None of the Debtors nor the Agent has engaged in any conduct that would cause or permit the Agency Agreement, as applicable, to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

27. The terms and provisions of the Agency Agreement, the Atos Sale Order, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Agent, the Petitioner, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Agent, the Petitioner, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

28. Subject to the terms and conditions of the Atos Sale Order, the Agency Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification,

amendment, or supplement does not materially change the terms of such agreements, documents, or other instruments and is otherwise in accordance with the terms of the Atos Sale Order.

29. Paragraphs ____ of this Order and the Agency Agreement, are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this Order and the Atos Sale Order, on the one hand, and the Agency Agreement, on the other, this Order and the Atos Sale Order shall govern.

**Releases**

10.    30. The releases, exculpation, and injunctive provisions set forth in the CCAA Vesting OrdersRVO are expressly recognized by this Court and given full force and effect in the United States.  For the avoidance of doubt, nothing herein shall release, exculpate, or enjoin any claims arising out of fraud, bad faith or illegal acts.

11.    In accordance with and subject to the RVO and the Subscription Agreement, effective upon the issuance of the Certificate, (i) Goli Canada, Martin Leroux, Michael Bitensky, Deepak Agarwal, and Randy Bitensky, and (ii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors (the Persons listed in (i) and (ii) being collectively, the "Released Parties") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, complaints, counterclaims, suits, damages, judgements, orders (including for injunctive relief or specific performance), executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or

equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, investment proposal, dealing, statutory declaration under the Canada Business Corporations Act, R.S.C., 1985, c. C-44 as permitted pursuant to the terms of the RVO, or other occurrence existing or taking place prior to the issuance of the Certificate or completed pursuant to the terms of the RVO and/or in connection with the Subscription Agreement, in respect of Goli Canada or its assets, business or affairs, or prior dealings with Goli Canada, wherever or however conducted or governed, the administration and/or management of Goli Canada and the Canadian Proceedings (collectively, the "Released Claims"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to Residual Co. or to any other entity and are extinguished.  Nothing in this paragraph shall waive, discharge, release, cancel or bar any claim against past and present directors of Goli Canada (Martin Leroux, Michael Bitensky and Deepak Agarwal) that relate to contractual rights of one or more creditors, or that is based on allegations of misrepresentations made by directors to creditors, or based on wrongful or oppressive conduct by directors, as it is not permitted pursuant to section 5.1(2) CCAA.  Furthermore, nothing in this paragraph shall waive, discharge, release, cancel or bar the claims against past and present directors, officers and employees of Goli Canada asserted in (a) the claims before the United States District Court for the Central District of California (case 2:23-cv-06597-CAS-MAA) against Goli Nutrition, Inc., 12416913 Canada Inc. (Predecessor 3), Deepak Agarwal, Michael Bitensky, VMG Partners Mentors Circle IV L.P., VMG Partners IV, 11 L.P., Merical Inc., Randy Bitensky, VMG Partners, Wayne Wu, Jonathan Marshall and Roger Tyre by Sharon Hoffman and Odelya Hoffman et al., as amended (the "Hoffman v Goli Claim"), and (b) any filing of the claims asserted in the Hoffman v Goli Claim

139294242.7201040264.6
CAN_DMS: \1004056029

as compulsory counterclaims in the claim before the United States District Court for the Central District of California (case 5:23- cv-00514-GW-DTB) against Sharon Hoffman by Goli Nutrition Inc.

31. The releases and protections in favor of: (i) Goli Canada and Residual Co. and their respective present and former directors, officers, employees, shareholders, legal counsel and advisors, (ii) the Monitor and its legal counsel, and their respective present and former directors, officers, partners, employees and advisors, (iii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors, and (iv) the Lenders and their respective present and former directors, officers, employees, legal counsel and advisors (collectively the "Release Parties") contained in the RVO are expressly recognized by this Court and given full force and effect in the United States.  Release Parties shall include their current and former affiliates' current and former members, directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, participants, subsidiaries, affiliates, partners, limited partners, general partners, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, management companies, advisory board members, investment fund advisors or managers, employees, agents, trustees, investment managers, financial advisors, partners, legal counsel, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.  The Release Parties shall be deemed released and discharged from liability arising from any and all present and future claims against the Released Parties based upon any fact or matter of occurrence related to the Principal Transaction or the Debtors, their assets, business or affairs

27

or administration of the Debtors; provided that, nothing in this paragraph shall waive, discharge, release, cancel or bar (a) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA or claim with respect to any act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence; or (b) any obligations of any of the Release Parties under or in connection with the Sale Transactions and/or any agreement, document, instrument, matter or transaction involving the Debtors arising in connection with or pursuant to any of the foregoing; provided further that, the releases set forth in this paragraph shall not include, nor limit or modify in any way, any claim (or any defenses) which any of the Debtors or their successors and assigns may hold or be entitled to assert against any Release Party relating to any contracts, leases, agreements, licenses, bank accounts or banking relationships, accounts receivable, invoices, or other ordinary course obligations which are remaining in effect. following the Effective Time.

32. In addition, the indemnification provisions and limitations of liability in favor of the Agent in connection with its performance under the Agency Agreement are expressly recognized by this Court and given full force and effect in the United States.

33. Any legal, factual, equitable, or other defenses (including, but not limited to, waiver, release, estoppel, or res judicata) held by any current or former officer or director of the Debtors in connection with any claim held by, asserted, or asserted in the future by any person relating in any manner to such current or former officer or director's role, position, conduct, acts, or omissions as an officer or director of any Debtor are hereby preserved and shall not be limited, waived, released, modified, or affected whatsoever by the entry of this Order.  Without limiting the foregoing, the rights of any current or former officer or director of any of the Debtors to (a) raise or assert that the releases, exculpation, and/or injunctive provisions contained in the

28

~~CCAA Vesting Orders entered in the Canadian Proceedings are applicable to them and are fully enforceable as a defense in any action brought in any court, tribunal, or forum within the United States, and (b) seek recognition of the releases, exculpation, and injunctions contained in the CCAA Vesting Orders under the comity doctrine or any other similar cross-border cooperation doctrine or treaty are fully preserved and retained in full.~~

12.    ~~34.~~ Pursuant to the terms of the RVO, and without limiting any other protections afforded to the Monitor under the RVO and/or CCAA, (a) "the Monitor ~~"~~, as well as its employees and representatives shall incur no liability whatsoever as a result of acting in accordance with [the RVO] and the Subscription Agreement approved ~~herein~~[by the RVO], other than any liability arising directly out of the gross negligence or wilful misconduct of the Monitor; and (b) no action lies against the Monitor by reason of [the RVO] or the performance of any act authorized by [the RVO], except by leave of the ~~[Canadian]~~ Court on ten (10) days notice to the Monitor and its counsel."

### **Additional Provisions**

13.    ~~35.~~ To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the Debtors' operations on account of the filing or pendency of these Chapter 15 Cases or the consummation of the Sale.

14.    ~~36.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion~~, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice~~.

15.    ~~37.~~ Notwithstanding anything to the contrary in this Order, the ~~CCAA Vesting Orders~~RVO, or any other document, this Court shall retain exclusive jurisdiction to hear and

29

determine all disputes which are in any forum or court within the territorial United States involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the RVO, ~~the Atos Sale Order,~~ or recognized by this Order.

16.    ~~38.~~ Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or the Petitioner from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset or interest that is not a Subscribed Share ~~or Atos Equipment~~.

17.    ~~39. All~~Consistent with the RVO, all Persons subject to the jurisdiction of the United States are permanently enjoined and restrained from taking any actions inconsistent with, or interfering with, the enforcement and implementation of the ~~CCAA Vesting Orders~~RVO or any documents incorporated by the foregoing.

18.    ~~40.~~ The Petitioner is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and the RVO ~~and/or Atos Sale Order, as applicable~~.

19.    ~~41.~~ Upon the closing of the Principal Transaction, as evidenced by the ~~Monitor filing a copy of the Monitor's certificate in the form attached to the RVO~~issuance of the Certificate, Goli Canada shall cease to be an applicant in the Canadian Proceedings, and thus upon the filing of a copy of the Certificate with this Court, and without further order of the Court, the Chapter 15 case of Goli Canada shall be ~~removed as a debtor and Residual Co. shall be added as a debtor in the Chapter 15 Cases, and the caption shall be amended as follows:~~deemed fully administered and the Chapter 15 Cases closed with respect to Goli Canada, subject to the rights of any interested party to request an order reopening the case under section

139294242.7201040264.6
CAN_DMS: \1004056029

350(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 5010 and the applicable Local Bankruptcy Rules.

20.    The Chapter 15 Case of Goli US shall proceed after the closing of the Goli Canada Chapter 15 Case with the following caption:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| --------------------------------------------------------- | x | |
| In re | : | Chapter 15 |
| | : | |
| ~~RESIDUAL CO~~GOLI NUTRITION INC., *et al.*,[1] | : | Case No. ~~24-~~24-10439 (~~—~~LSS) |
| Debtors in a Foreign Proceeding. | : | ~~Joint Administration Requested~~ |
| --------------------------------------------------------- | x | |

21.    Upon the addition of any Residual Co. or any other residual company as an applicant in the Canadian Proceeding pursuant to the RVO and subject to the filing of a Chapter 15 petition on behalf of such Residual Co. or other residual company with this Court and the granting of a motion for joint administration, (a) such Chapter 15 case will be jointly administered with the above-captioned Chapter 15 case of Goli US, (b) any and all relief granted by and findings of this Court with respect to the Debtors in these Chapter 15 Cases following the Petition Date shall apply to such Residual Co. or other residual company to the same extent as such relief and findings apply to the Debtors, and (c) any reference in any order of this Court to a "Debtor" in these Chapter 15 Cases shall be deemed to include a reference such Residual Co. or other residual company, *mutatis mutandis*.

---

[1] The Debtors in ~~these~~this Chapter 15 ~~cases, along with~~case is Goli US (as defined herein) and the last ~~four~~4 digits of ~~each Debtor's federal identification number, are: Residual Co.,~~its federal tax identification number ~~[___], and Goli Nutrition Inc., a company incorporated in Delaware, federal tax identification number [___]. The Debtors are collectively~~is 2655. The Debtor is managed from ~~their~~its corporate headquarters which ~~are~~is located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

31

22.   42. Notwithstanding any provisions in the Bankruptcy Rules to the contrary, including but limited to Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and the Debtors, the Petitioner, and the Purchaser, and Gordon Brothers are authorized, each in its discretion, in accordance with the RVO, to close the transactions contemplated by the Subscription Agreement and the Agency Agreement, respectively, immediately upon entry of this Order.

23.   43. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, the CCAA RVO and the Atos Sale OrderRVO in the United States.

Dated: ____, 2024
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

139294242.7201040264.6
CAN_DMS: \1004056029