# <u>EXHIBIT A</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------- x
In re:                                                         :   Chapter 15
                                                               :
GOLI NUTRITION INC., et al.,¹                                  :   Case No. 24-10438 (LSS)
                                                               :
                                                               :   Jointly Administered
            Debtors in a Foreign Proceeding.                   :
-------------------------------------------------------------- x   Ref. Nos. 7 & 53
```

## ORDER RECOGNIZING AND ENFORCING THE RVO
## AND GRANTING RELATED RELIEF

Upon consideration of the motion to approve, among other things, the RVO [Docket No. 7](the "Motion")² filed by Deloitte Restructuring Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Goli Nutrition Inc., a company incorporated in Québec, Canada ("Goli Canada"), and Goli Nutrition Inc., a company incorporated in Delaware ("Goli US," and, together with Goli Canada, the "Debtors"); and upon consideration of the Verified Petition, the Zucker Declaration, the *Petitioner's Supplement in Support of Motion for Entry of an Order (I) Recognizing and Enforcing the RVO and the ATOS Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 53] (the "Supplemental Brief"), and the *Supplemental Declaration of Noah Zucker in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief, (B) Motion for Provisional Relief, and (C) Motion for Order Enforcing CCAA Vesting Orders*

---

¹ The Debtors in these Chapter 15 cases, are: Goli Canada (as defined herein) and the last 4 digits of its Canadian business number is 0002; and Goli US (as defined herein) and the last 4 digits of its federal tax identification number is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

dated April 11, 2024 [Docket No. 56] and the Declaration of Noah Zucker dated April 13, 2024 {Docket No. 67] (collectively, the "<u>Supplemental Zucker Declarations</u>"); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 109 and 1501; and venue being proper before this Court pursuant to § 1410; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and adequate and sufficient notice of the filing of the Motion having been given by the Petitioner; and it appearing that the relief requested in the Motion is necessary and beneficial to the Debtors and the Petitioner; and this Court having held a hearing (the "<u>Hearing</u>") to consider the relief requested in the Motion; and there being no objections or other responses filed that have not been overruled, withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      This Court entered the Recognition Order [Docket No. 85] on April 18, 2024, and has found that the Debtors have satisfied the requirements of, among others, sections 101(23) and (24), 1502(4), 1504, 1509, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code.  All such findings by this Court are hereby incorporated by reference herein and such Recognition Order shall continue in effect in all respects except to the extent this Order directly modifies or directly contradicts such Recognition Order.

B.      On April 9, 2024 (as rectified on April 17, 2024), the Canadian Court entered the RVO, approving, among other things, the RVO transaction and all related documents, and the addition of Residual Co. as an applicant in the Canadian Proceedings and the removal of Goli Canada as an applicant in the Canadian Proceedings; ordering Goli Canada to issue the Subscribed

Shares, and vesting in the Purchaser all right, title and interest in and to the Subscribed Shares, free and clear of any encumbrances; ordering Goli Canada to redeem and cancel the Legacy Equity Interests (as defined in the RVO) without any payment or other consideration; and approving the Pre-Closing Reorganization (as defined in the RVO) and vesting out of Goli Canada certain excluded assets, contracts and liabilities and discharging all encumbrances against Goli Canada other than certain permitted encumbrances.

C.      Based on the affidavits of service filed with, and the representations made to, this Court: (i) notice of the Motion, the Hearing, and the RVO was proper, timely, adequate, and sufficient under the circumstances of these Chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (ii) no other or further notice of the Motion, the RVO, or the entry of this Order is necessary or shall be required.

D.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

E.      The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policies of the United States, is warranted pursuant to sections 105(a), 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

F.      Based on the information contained in the Motion, the Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, the Debtors, with the consent of and in consultation with the Lenders, conducted an extensive marketing and sales process prior to the commencement of the Canadian Proceedings

with respect to the Debtors' business and their assets, and such process was non-collusive, duly noticed, and provided a reasonable opportunity for potential buyers to make any offer. The Petitioner, the Debtors and the Lenders, whose collateral is the subject to the Sale Transactions, support RVO transaction, including the disposition of the Subscribed Shares pursuant to the Subscription Agreement in connection with the RVO transaction. As such, it is appropriate that the Subscribed Shares be issued to the Purchaser on the terms and subject to the conditions set forth in the Subscription Agreement.

G.      Based on information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, the relief granted herein relates to assets and interests that, under the laws of the United States, should be administered in the Canadian Proceedings.

H.      Based on information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, and the record made at the Hearing, the Debtors' performance under the Subscription Agreement: (i) constitute a sound and reasonable exercise of the Debtors' business judgment; (ii) provide value and are beneficial to the Debtors and is in the best interests of the Debtors, their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances. The consideration provided by the Purchaser for the Subscribed Shares under the Subscription Agreement was the highest and best offer providing a greater recovery than any available alternative and constitute fair consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Avoidance Transaction Act, and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

I.      Time is of the essence in consummating the transactions implemented pursuant to the Subscription Agreement.  To maximize the value of the Subscribed Shares, it is essential that the pertinent transactions occur and be recognized and enforced in the United States promptly. The Petitioner, on behalf of the Debtors, has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate implementation and consummation of such transactions.   Accordingly, the transactions contemplated by the Subscription Agreement can be closed as soon as reasonably practicable upon entry of this Order.

J.      Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the other pleadings and documents filed in these chapter 15 cases, and the record made at the Hearing, the Subscription Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser, in good faith, without collusion, and from arm's-length bargaining positions.

K.      Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the Subscription Agreement was not entered into for the purpose of hindering, delaying, or defrauding any present or future creditors of the Debtors.

L.      In accordance with the RVO, the Purchaser will acquire the Subscribed Share and will be vested with all rights, title, and interests in and to the Subscribed Shares, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

M.      Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the Petitioner and the Debtors, as appropriate: (i) have full power and authority to execute the Subscription

Agreement and all other documents contemplated thereby; (ii) have all the power and authority necessary to consummate the transactions contemplated by the Subscription Agreement; and (iii) upon entry of this Order, other than any consents identified in the RVO and Subscription Agreement, need no consent or approval from any other person or governmental unit to consummate the transactions contemplated thereby. Such transactions have been duly and validly authorized by all necessary corporate action of the Debtors.

N.     Pursuant to the RVO, the Subscription Agreement is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable pursuant to its terms. The Subscription Agreement, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon the Debtors and the Petitioner in these chapter 15 cases and shall not be subject to rejection or avoidance by the foregoing parties or any other Person (as defined in section 101(41) of the Bankruptcy Code).

O.     Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the Supplemental Brief, the Supplemental Zucker Declarations, the Purchaser would not have entered into the Subscription Agreement and would not consummate the related transactions, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if Purchaser did not, in accordance with the RVO, acquire the Subscribed Shares free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities as defined in the RVO), or if the Purchaser would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any other interest, including, as applicable, certain liabilities related to the Subscribed Shares that will not be assumed by the Purchaser, as described in the Subscription Agreement.

P.      The interests of the Debtors' creditors in the United States are sufficiently protected.  The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policies of the United States, and warranted pursuant to sections 1521(b) and 1522 of the Bankruptcy Code.

Q.      The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

R.      Any and all findings of fact and conclusions of law announced by this Court at the Hearing are incorporated herein.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

### Recognition and Enforcement of the RVO

3.      The RVO, a copy of which is annexed hereto as **Exhibit 1**, and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized, enforced, and given full force and effect in the United States in their entirety.  The failure specifically to refer to or include any particular provision of the Subscription Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Subscription Agreement and the transactions contemplated thereunder, be fully recognized, enforced, and given full force and effect in the United States in their entirety.

4.        Pursuant to sections 105, 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the RVO and this Order, the Debtors, the Purchaser, and the Petitioner (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the transactions contemplated by the Subscription Agreement, including the sale of the Subscribed Shares to the Purchaser, in accordance with the Subscription Agreement, the RVO, and this Order; (b) distribute proceeds of the Subscription Agreement in accordance with and as authorized therein; (c) issue the Monitor's certificate in the form attached as Schedule A to Goli US and the Purchaser (the "Certificate"), and (d) perform, consummate, implement, and close fully the transactions contemplated by the Subscription Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Subscription Agreement and the transactions contemplated thereunder and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Subscription Agreement, all without further order of the Court, and are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents on behalf of such Person (as defined in section 101(41) of the Bankruptcy Code) with respect to the Subscribed Shares that are necessary or appropriate to effectuate the Subscription Agreement and the transactions contemplated thereunder, any related agreements, the RVO, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors or the Purchaser may determine are necessary or appropriate, and are hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy

of the RVO, this Order or the Subscription Agreement, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests against the Subscribed Shares. The RVO and this Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

5.    Pursuant to sections 105(a), 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, and in accordance with and subject to the RVO and Subscription Agreement, on the Closing Date, the Subscribed Shares shall be transferred and absolutely vest in the Purchaser, without further instrument of transfer or assignment, and such transfer shall: (a) be a legal, valid, binding, and effective transfer of the Subscribed Shares to the Purchaser; (b) vest the Purchaser with all rights, title, and interests in the Subscribed Shares; and (c) be free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

6.    Pursuant to sections 105(a), 1501, 1507, 1520, 1521, 1525 and 1527 of the Bankruptcy Code, and in accordance with and subject to the RVO and Subscription Agreement, upon the closing of the transaction contemplated by the Subscription Agreement, except with respect to solely Permitted Encumbrances and Retained Liabilities (as defined in the RVO): (a) no holder of a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets shall interfere, and each and every such holder is enjoined from interfering with the Purchaser's rights and title to or use and enjoyment of the Subscribed Shares; and (b) the sale of the Subscribed Shares, the Subscription Agreement, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof. All Persons holding a lien, claim, encumbrance, or other interest against or

in the Debtors and/or their assets are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest against the Subscribed Shares, the Purchaser, or any of its members, and their respective affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, successors, and assigns from and after closing of the transactions contemplated by the Subscription Agreement.

7.      The terms and provisions of the Subscription Agreement, the RVO, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, the Petitioner, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Purchaser, the Petitioner, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

8.      Subject to the terms and conditions of the RVO, the Subscription Agreement and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment, or supplement does not materially change the terms of such agreements, documents, or other instruments and is otherwise in accordance with the terms of the RVO.

9.      The provisions of this Order and the Subscription Agreement are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this

Order and the RVO, on the one hand, and the Subscription Agreement, on the other, this Order and the RVO shall govern.

**Releases**

10.    The releases, exculpation, and injunctive provisions set forth in the RVO are expressly recognized by this Court and given full force and effect in the United States.  For the avoidance of doubt, nothing herein shall release, exculpate, or enjoin any claims arising out of fraud, bad faith or illegal acts.

11.    In accordance with and subject to the RVO and the Subscription Agreement, effective upon the issuance of the Certificate, (i) Goli Canada, Martin Leroux, Michael Bitensky, Deepak Agarwal, and Randy Bitensky, and (ii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors (the Persons listed in (i) and (ii) being collectively, the "Released Parties") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, complaints, counterclaims, suits, damages, judgements, orders (including for injunctive relief or specific performance), executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, investment proposal, dealing, statutory declaration under the Canada Business Corporations Act, R.S.C., 1985, c. C-44 as permitted pursuant to the terms of the RVO, or other occurrence existing or taking place prior to the issuance of the Certificate or completed pursuant to the terms of the RVO and/or in connection with the Subscription Agreement, in respect of Goli Canada or its assets, business or

affairs, or prior dealings with Goli Canada, wherever or however conducted or governed, the administration and/or management of Goli Canada and the Canadian Proceedings (collectively, the "Released Claims"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to Residual Co. or to any other entity and are extinguished. Nothing in this paragraph shall waive, discharge, release, cancel or bar any claim against past and present directors of Goli Canada (Martin Leroux, Michael Bitensky and Deepak Agarwal) that relate to contractual rights of one or more creditors, or that is based on allegations of misrepresentations made by directors to creditors, or based on wrongful or oppressive conduct by directors, as it is not permitted pursuant to section 5.1(2) CCAA. Furthermore, nothing in this paragraph shall waive, discharge, release, cancel or bar the claims against past and present directors, officers and employees of Goli Canada asserted in (a) the claims before the United States District Court for the Central District of California (case 2:23-cv-06597-CAS-MAA) against Goli Nutrition, Inc., 12416913 Canada Inc. (Predecessor 3), Deepak Agarwal, Michael Bitensky, VMG Partners Mentors Circle IV L.P., VMG Partners IV, 11 L.P., Merical Inc., Randy Bitensky, VMG Partners, Wayne Wu, Jonathan Marshall and Roger Tyre by Sharon Hoffman and Odelya Hoffman et al., as amended (the "Hoffman v Goli Claim"), and (b) any filing of the claims asserted in the Hoffman v Goli Claim as compulsory counterclaims in the claim before the United States District Court for the Central District of California (case 5:23- cv-00514-GW-DTB) against Sharon Hoffman by Goli Nutrition Inc.

12. Pursuant to the terms of the RVO, and without limiting any other protections afforded to the Monitor under the RVO and/or CCAA, (a) "the Monitor, as well as its employees and representatives shall incur no liability whatsoever as a result of acting in accordance with [the RVO] and the Subscription Agreement approved [by the RVO], other than any liability arising

directly out of the gross negligence or wilful misconduct of the Monitor; and (b) no action lies against the Monitor by reason of [the RVO] or the performance of any act authorized by [the RVO], except by leave of the Canadian Court on ten (10) days notice to the Monitor and its counsel."

### Additional Provisions

13.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the Debtors' operations on account of the filing or pendency of these Chapter 15 Cases or the consummation of the Sale.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

15.     Notwithstanding anything to the contrary in this Order, the RVO, or any other document, this Court shall retain exclusive jurisdiction to hear and determine all disputes which are in any forum or court within the territorial United States involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the RVO, or recognized by this Order.

16.     Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or the Petitioner from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset or interest that is not a Subscribed Share.

17.     Consistent with the RVO, all Persons subject to the jurisdiction of the United States are permanently enjoined and restrained from taking any actions inconsistent with, or interfering with, the enforcement and implementation of the RVO or any documents incorporated by the foregoing.

18.     The Petitioner is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and the RVO.

19.     Upon the closing of the Principal Transaction, as evidenced by the issuance of the Certificate, Goli Canada shall cease to be an applicant in the Canadian Proceedings, and thus upon the filing of a copy of the Certificate with this Court, and without further order of the Court, the Chapter 15 case of Goli Canada shall be deemed fully administered and the Chapter 15 Cases closed with respect to Goli Canada, subject to the rights of any interested party to request an order reopening the case under section 350(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 5010 and the applicable Local Bankruptcy Rules.

20.     The Chapter 15 Case of Goli US shall proceed after the closing of the Goli Canada Chapter 15 Case with the following caption:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ------------------------------------------------------- x | | |
| In re | : | Chapter 15 |
| GOLI NUTRITION INC., *et al.*,[1] | : | Case No. 24-10439 (LSS) |
| Debtors in a Foreign Proceeding. | : | |
| ------------------------------------------------------- x | | |

21.     Upon the addition of any Residual Co. or any other residual company as an applicant in the Canadian Proceeding pursuant to the RVO and subject to the filing of a Chapter 15 petition on behalf of such Residual Co. or other residual company with this Court and the granting of a motion for joint administration, (a) such Chapter 15 case will be jointly administered

---

[1] The Debtors in this Chapter 15 case is Goli US (as defined herein) and the last 4 digits of its federal tax identification number is 2655. The Debtor is managed from its corporate headquarters which is located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

with the above-captioned Chapter 15 case of Goli US, (b) any and all relief granted by and findings of this Court with respect to the Debtors in these Chapter 15 Cases following the Petition Date shall apply to such Residual Co. or other residual company to the same extent as such relief and findings apply to the Debtors, and (c) any reference in any order of this Court to a "Debtor" in these Chapter 15 Cases shall be deemed to include a reference such Residual Co. or other residual company, *mutatis mutandis*.

22.    Notwithstanding anything herein, this Order shall not release or discharge any rights or claims that the Hoffman Parties may have against Residual Co. or any of the Excluded Assets located in the Norco Facility, if any, and any such rights or claims, if any, as against any of the Excluded Assets located in the Norco Facility shall attach to the Excluded Assets located in the Norco Facility following their transfer to Residual Co. with the same nature and priority as they had immediately prior to such transfer.

23.    Notwithstanding any provisions in the Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and the Debtors, the Petitioner, and the Purchaser, are authorized, each in its discretion, in accordance with the RVO, to close the transactions contemplated by the Subscription Agreement immediately upon entry of this Order.

24.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order and the RVO in the United States.

Dated: _____, 2024                    _____
Wilmington, Delaware                 UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

# SUPERIOR COURT

(Commercial Division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

No.:    500-11-063787-242

DATE:  April 17, 2024

_____

**BY  THE HONOURABLE  MARTIN F. SHEEHAN, J.S.C.**
_____

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED:

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
          Applicants
and
**DELOITTE RESTRUCTURING INC.**
          Monitor

_____

RECTIFIED APPROVAL AND REVERSE VESTING ORDER
_____

[1]  **WHEREAS** the undersigned rendered a written judgment on April 9, 2024;

[2]  **WHEREAS** the file number on the judgment submitted by the parties contained an error;

[3]  **WHEREAS** it is appropriate to rectify the file number on the judgment;

**FOR THESE REASONS, THE COURT:**

[4]  **MODIFIES** the file number on the judgment;

JS1699

### WHEREFORE THE COURT:

[7]        **GRANTS** the Amended Application.

[8]        **ORDERS** that, unless otherwise indicated or defined herein, capitalized terms used in this Order shall have the meanings given to them in the Subscription Agreement.

### SERVICE

[9]        **ORDERS** that any prior delay for the presentation of this Amended Application is hereby abridged and validated so that the Amended Application is properly returnable today and hereby dispenses with further service thereof.

[10]       **PERMITS** service of this Order at any time and place and by any means whatsoever.

### SUBSCRIPTION AGREEMENT

[11]       **AUTHORIZES** and **APPROVES** the Transactions and entering into and execution by the Vendor of the Subscription Agreement and completion of all the Transactions by the Vendor and Residual Co., with such alterations, changes, amendments, deletions or additions thereto, as may be agreed to with the consent of the Monitor.

### APPROVAL OF TRANSACTIONS

[12]       **AUTHORIZES** the Applicants, Residual Co., the Purchaser, and the Monitor, as the case may be, to perform all acts, sign all documents and take any necessary action to execute any agreement, contract, deed, provision, transaction or undertaking stipulated in the Subscription Agreement with such alterations, changes, amendments, deletions or additions thereto, as may be agreed to with the consent of the Monitor and any other ancillary document which could be required or useful to give full and complete effect thereto and to implement the Transactions.

[13]       **AUTHORIZES** and **DIRECTS** the Applicants, Residual Co., and any other successors of the Vendor to implement the Transactions contemplated in the Subscription Agreement (including the Pre-Closing Reorganization contemplated in the Steps Memo), including to:

*13.1.1. execute and deliver any documents and assurances governing or giving effect to the Transactions as the Vendor, in its discretion, may deem to be reasonably necessary or advisable to conclude the Transactions, including the execution of such deeds, contracts or documents as may be contemplated in the Subscription Agreement (including the Steps Memo) and all such deeds, contracts or documents are hereby ratified, approved and confirmed; and*

*13.1.2. take such steps as are deemed necessary or incidental to the implementation of the Transactions.*

[14]    ***ORDERS*** *and* ***DECLARES*** *that the Applicants, Residual Co., and any successors of the Vendor are hereby permitted to execute and file articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Transactions and that such articles, documents or other instruments shall be deemed to be duly authorized, valid and effective notwithstanding any requirement under federal, provincial or territorial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required by law to effect the Transactions.*

[15]    ***ORDERS*** *and* ***DECLARES*** *that this Order shall constitute the only authorization required by the Applicants, Residual Co., and any successors to proceed with the Transactions and that no partner, director, shareholder, contractual or regulatory approval shall be required in connection with any of the steps contemplated pursuant to the Transactions and the execution, delivery, and performance of the foregoing have been and are within the power of the relevant parties, have been and are duly authorized by all necessary actions, and are hereby ratified for all intents and purposes.*

[16]    ***ORDERS*** *and* ***DECLARES*** *that any defects in any proceedings, appointments, election, payments or any other corporate acts by the Applicants shall henceforth be deemed to be rectified and corrected, the whole provided such acts, proceedings, appointments, elections, payments or other corporate acts were permitted by law at the relevant times.*

[17]    ***ORDERS*** *the Director appointed pursuant section 260 of the Canada Business Corporations Act, R.S.C., 1985, c. C-44 (the* ***“CBCA”****) and the Registraire des entreprises du Québec pursuant to the Business Corporations Act, CQLR c S-31.1 to accept and receive any articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Transactions, filed by the Vendor, Residual Co., or any successors pursuant to the Transactions, as the case may be.*

[18]      **ORDERS** and **DECLARES** that upon the issuance of a Monitor's certificate substantially in the form appended as **Schedule "A"** hereto (the "**Certificate**") to the Vendor and the Purchaser, the following shall occur and shall be deemed to have occurred on the Closing Date, all in accordance with the Closing Sequence set out in the Subscription Agreement and the steps contemplated thereunder:

18.1.1.  the Pre-Closing Reorganization shall be completed, and the transactions set out in the Steps Memo shall occur and shall be deemed to have occurred in the sequence set out in the Steps Memo, including for greater certainty (i) the addition of Residual Co. as an Applicant in these CCAA proceedings in accordance with paragraph [31](a) and [31](b), (ii) the cancellation of the Legacy Preferred Equity Interests in accordance with paragraph [18](b), and (iii) the vesting of the Excluded Assets, Excluded Liabilities and Excluded Contracts in and to Residual Co. in accordance with paragraph [32];

18.1.2.  the Vendor shall, and shall be deemed to, redeem and acquire for cancellation each Legacy Preferred Equity Interest without any payment thereon, and all such redeemed Legacy Preferred Equity Interests together with any agreement, contract, plan, indenture, deed, certificate, subscription right, conversion right, pre-emptive right, option or other document or instrument governing or having been created or granted in connection with the Legacy Preferred Equity Interests shall be deemed terminated and cancelled;

18.1.3.  the Vendor shall issue the Subscribed Shares to the Purchaser, the Purchaser shall purchase the Subscribed Shares, the Consideration shall be paid in accordance with the Subscription Agreement, and all right, title and interest in and to the Subscribed Shares shall vest absolutely and exclusively in and with the Purchaser, free and clear of and from any and all claims (including any complaints or claims for fraud or fraudulent misrepresentation, breach of fiduciary duty, conversion, securities offences, violation of the Racketeer Influenced and Corrupt Organizations Act (U.S.), or misappropriations under the Defend Trade Secrets Act (U.S.)), Liabilities (direct, indirect, absolute or contingent), obligations, prior claims, right of retention, liens, security interests, charges, hypothecs, trusts, deemed trusts (statutory or otherwise), judgments or orders (including for injunctive relief or specific performance), writs of seizure or execution, notices of sale, contractual rights (including purchase options, rights of first refusal, rights of first offer or any other pre-emptive contractual rights) and encumbrances, whether or not they have been registered, published or filed and whether secured, unsecured or otherwise (collectively, the "**Encumbrances**"), including without limiting the generality of the foregoing, all Encumbrances created by order of this Court and all charges or security evidenced by registration, publication or filing pursuant to the Civil Code of Québec in movable / immovable property, and for greater certainty all of the Encumbrances affecting or relating to the Subscribed Shares be cancelled and discharged as against the

*Subscribed Shares, in each case effective as of the applicable time and date of the Certificate;*

*18.1.4. the Vendor shall, and shall be deemed to, redeem and acquire for cancellation each Legacy Common Equity Interest without any payment thereon, and all such redeemed Legacy Common Equity Interests together with any agreement, contract, plan, indenture, deed, certificate, subscription right, conversion right, pre-emptive right, option or other document or instrument governing or having been created or granted in connection with the Legacy Common Equity Interests shall be deemed terminated and cancelled; and*

*18.1.5. the Directors (as defined in the Initial Order) shall be deemed to have resigned from their positions without any further approvals, consents or other formalities being required and notwithstanding the provisions of any agreements governing the same, such resignations and releases to be effective at the Closing Time.*

*[19]    **ORDERS** the Personal and Movable Real Rights Registrar of the Register for Personal and Movable Real Rights, upon presentation of the Certificate and a certified copy of this Order accompanied by the required application for registration and upon payment of the prescribed fees, to publish this Order and cancel the movable property Encumbrances listed in **Schedule "B"** hereto.*

*[20]    **ORDERS** and **DECLARES** that any distributions, disbursements or payments made under this Order, including, for greater certainty, pursuant to the Transactions, shall not constitute a "distribution" by any Person for the purposes of section 107 of the Corporations Tax Act (Ontario), section 22 of the Retail Sales Tax Act (Ontario), section 117 of the Taxation Act, 2007 (Ontario), section 34 of the Income Tax Act (British Columbia), section 104 of the Social Service Tax Act (British Columbia), section 49 of the Alberta Corporate Tax Act, section 22 of the Income Tax Act (Manitoba), section 73  of The Tax Administration and Miscellaneous Taxes Act (Manitoba), sections 14 and 14.0.0.1 of the Tax Administration Act (Québec), section 85 of The Income Tax Act, 2000 (Saskatchewan), section 48 of The Revenue and Financial Services Act (Saskatchewan), section 56 of the Income Tax Act (Nova Scotia), section 159 of the Income Tax Act (Canada), section 270 of the Excise Tax Act (Canada), section 46 of the Employment Insurance Act (Canada), or any other similar federal, provincial or territorial tax legislation (collectively, the "**Tax Statutes**"), and the Vendor in making any such distributions, disbursements or payments, as applicable, is merely a disbursing agent under this Order, including, for greater certainty, pursuant to the Transactions, and is not exercising any discretion in making such payments and no Person is "distributing" such funds for the purpose of the Tax Statutes, and the Vendor and any other Person shall not incur any liability under the Tax Statutes in*

*respect of distributions, disbursements or payments made by it and the Vendor and any other Person is hereby forever released, remised and discharged from any claims against it under or pursuant to the Tax Statutes or otherwise at law, arising in respect of or as a result of distributions, disbursements or payments made by it in accordance with this Order, including, for greater certainty, pursuant to the Transactions, and any claims of this nature are hereby forever barred.*

[21]    **DECLARES** *that the present Order does not prevent the Canada Revenue Agency and the Agence du revenu du Québec (collectively, the "**Tax Agencies**") to set off or compensate, if applicable:*

*21.1.1.  on one hand, any claim of any of the Tax Agencies against any Applicant, and, on the other hand, any claim of such Applicant against such Tax Agency, provided that the aforementioned claims shall both be pertaining to periods prior to the Filing Date; and*

*21.1.2.  on one hand, any claim of any of the Tax Agencies against any Applicant, and, on the other hand, any claim of such Applicant against such Tax Agency, provided that the aforementioned claims shall both be pertaining to periods between the Filing Date and the Closing Time.*

[22]    **ORDERS** *and* **DECLARES** *that upon the issuance of the Certificate, all Persons shall be deemed to have waived any and all defaults of the Vendor, directly or indirectly, or non-compliance then existing or previously committed by the Vendor or caused by the Vendor, directly or indirectly, or non-compliance with any covenant, positive or negative pledge, warranty, representation, term, provision, condition or obligation, express or implied, in any contract, credit document, agreement for sale, lease or other agreement, written or oral, and any and all amendments or supplements thereto, existing between such Person and the Vendor, or its successors, arising from the insolvency of the Vendor, the filing by the Vendor under the CCAA or the completion of the Transaction, and any and all notices of default and demands for payment under any instrument, including any guarantee arising from such default, shall be deemed to have been rescinded, and except as expressly contemplated by the Subscription Agreement, all contracts (excluding the Excluded Contracts) to which the Vendor is party upon delivery of the Monitor's Certificate will be and remain in full force and effect.*

[23]    **ORDERS**, *for greater certainty, that: (a) nothing in paragraph [22] hereof shall waive, compromise or discharge any obligations of the Vendor in respect of any Retained Liabilities, and (b) the designation of any Encumbrance as a Retained Liability is without prejudice to the Vendor's right to dispute the existence, validity or quantum of any such Retained Liability, and (c) nothing in this Order or the Subscription Agreement shall affect or waive the Vendor's rights*

*and defences, both legal and equitable, with respect to any Retained Liability, including, but not limited to, all rights with respect to entitlements to set-off or compensation or recoupments against such Retained Liability.*

[24]     ***ORDERS*** *and* ***DECLARES*** *that the implementation of the Transactions shall be deemed not to constitute a change in ownership or change in control under any agreement, including without limiting the foregoing, any financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease, permit or license in existence on the Closing Date and to which the Vendor is a party.*

[25]     ***ORDERS*** *that all monetary defaults of the Vendor in relation to each of the Retained Contracts will be remedied by the Purchaser within five (5) business days of the Closing Date, unless otherwise agreed to by the Purchaser and the applicable counterparty to the Retained Contract.*

[26]     ***ORDERS*** *and* ***DIRECTS*** *the Monitor to issue the Certificate as soon as practicable upon the occurrence of the closing of the Transactions.*

[27]     ***ORDERS*** *and* ***DIRECTS*** *the Monitor to file with the Court a copy of the Certificate, no later than two Business Days after the issuance thereof.*

[28]     ***DECLARES*** *that upon the issuance of the Certificate, the Transactions shall be deemed to constitute and shall have the same effect as a sale under judicial authority as per the provisions of the Code of Civil Procedure and a forced sale as per the provisions of the Civil Code of Québec.*

[29]     ***ORDERS*** *that, pursuant to clause 18(4) of the Act Respecting the Protection of Personal Information in the Private Sector (Québec), the Applicants or the Monitor, as the case may be, are authorized, permitted and directed to, at the Closing Time, disclose to the Purchaser and Residual Co., as applicable, all human resources and payroll information in the records of the Applicants pertaining to past and current employees of the Applicants. The Purchaser shall maintain and cause the Vendor, after Closing, to maintain and protect the privacy of such information, and Residual Co. shall maintain and protect the privacy of such information, as applicable, each in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendor prior to Closing.*

[30]     ***ORDERS*** *that the Subscription Agreement and the Transactions shall constitute a "proposal" and this Order shall constitute a "reorganization", in each case for the purposes of Section 191 of the Canada Business Corporations Act.*

### *CCAA APPLICANTS*

[31]    **ORDERS** *that upon the issuance of the Certificate, in accordance with the Closing Sequence set out in the Subscription Agreement (including the Steps Memo):*

*31.1.1.  Residual Co. is a company to which the CCAA applies;*

*31.1.2.  Residual Co. shall be added as an Applicant in these CCAA proceedings and any reference in any Order of this Court in respect of these CCAA proceedings to an "Applicant" or "Applicants" shall also refer to Residual Co. mutadis mutandis, and, for greater certainty, each of the CCAA Charges (as defined in the Initial Order) shall also constitute a charge on the property of Residual Co.; and*

*31.1.3.  Goli shall cease to be an Applicant in these CCAA proceedings, and shall be released from the purview of any Order of this Court granted in respect of these CCAA proceedings, including the CCAA Charges, save and except for the present Order, the terms of which (as they related to Goli) shall continue to apply in all respects.*

[32]    **ORDERS** *that upon the issuance of the Certificate, in accordance with the Closing Sequence set out in the Subscription Agreement (including the Steps Memo):*

*32.1.1.  all Excluded Liabilities, Excluded Assets and Excluded Contracts shall vest absolutely and exclusively, at the times provided for in the Closing Sequence and Steps Memo, in Residual Co., and all Encumbrances charging the Excluded Liabilities, Excluded Assets and Excluded Contracts shall continue to attach thereto with the same nature and priority as they had immediately prior to their transfer in each case;*

*32.1.2.  all Encumbrances shall attach to the Excluded Assets with the same priority as they had with respect to the assets and properties of the Vendor immediately prior to their transfer in each case;*

*32.1.3.  the Purchaser shall own and hold, to the exclusion of all other Persons, free and clear of and from any Encumbrances, except the Permitted Encumbrances listed in **Schedule "C"** hereto, all right, title and interest in the Subscribed Shares;*

*32.1.4.  all debts, liabilities, taxes, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever of the Vendor, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, due or not yet due, in law or equity and whether based in statute  or  otherwise,*

*including, without limitation, the Excluded Liabilities or Excluded Contracts, arising before or after the CCAA filing of the Vendor, shall be transferred to, assumed by and vest absolutely and exclusively in Residual Co. with the same attributes and rights resulting from existing defaults of the Vendor, such that, as of the time provided in the Closing Sequence and Steps Memo, the Excluded Liabilities and the Excluded Contracts shall be novated in each case and become obligations of Residual Co. and not obligations of the Vendor, and the Vendor shall be forever released and discharged from such Excluded Liabilities and Excluded Contracts, and all Encumbrances shall be forever released and discharged, it being understood that nothing in the present Order shall be deemed to cancel any of the Permitted Encumbrances, as applicable to the Vendor;*

*32.1.5. the commencement or prosecution, whether directly, indirectly, derivatively or otherwise of any demands, claims, actions, counterclaims, suits, judgments, or other remedy or recovery with respect to any indebtedness, liability, obligation or cause of action against the Vendor (including any successor entity) in respect of the Excluded Liabilities and Excluded Contracts shall be permanently enjoined and barred;*

*32.1.6. the Retained Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Subscription Agreement or the steps and actions taken in accordance with the terms thereof;*

*32.1.7. the nature, attributes (including rights resulting from existing defaults of the Vendor) and priority of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to and assumption by Residual Co.; and*

*32.1.8. any Person that, prior to the Closing Date, had a valid right or claim against the Vendor in respect of the Excluded Liabilities or the Excluded Contracts (each a "**Subject Claim**") shall no longer have such claim against the Vendor (including any successor corporation), but will have an equivalent claim against Residual Co. in respect of the Excluded Liabilities or the Excluded Contracts from and after the Closing Date in its place and stead, with the same attributes and rights resulting from existing defaults of the Vendor and, nothing in this Order limits, lessens, modifies (other than by change of debtor) or extinguishes the Excluded Liabilities or the Excluded Contracts or the Subject Claim of any Person as against Residual Co., and Residual Co. shall be the sole and exclusive debtor of such Subject Claim.*

### *RELEASES*

[33]    **ORDERS** that effective upon the issuance of the Certificate, (i) the Vendor, Martin Leroux, Michael Bitensky, Deepak Agarwal, and Randy Bitensky, and (ii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors (the Persons listed in (i) and (ii) being collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, complaints, counterclaims, suits, damages, judgements, orders (including for injunctive relief or specific performance), executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, investment proposal, dealing, statutory declaration under the CBCA as permitted pursuant to the terms of this Order, or other occurrence existing or taking place prior to the issuance of the Certificate or completed pursuant to the terms of this Order and/or in connection with the Transactions, in respect of the Vendor or its assets, business or affairs, or prior dealings with the Vendor, wherever or however conducted or governed, the administration and/or management of the Vendor and these CCAA proceedings (collectively, the "**Released Claims**"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to Residual Co. or to any other entity and are extinguished. Nothing in this paragraph shall waive, discharge, release, cancel or bar any claim against past and present directors of the Vendor (Martin Leroux, Michael Bitensky and Deepak Agarwal) that relate to contractual rights of one or more creditors, or that is based on allegations of misrepresentations made by directors to creditors, or based on wrongful or oppressive conduct by directors, as it is not permitted pursuant to section 5.1(2) CCAA. Furthermore, nothing in this paragraph shall waive, discharge, release, cancel or bar the claims against past and present directors, officers and employees of the Vendor asserted in (a) the claims before the United States District Court for the Central District of California (case 2:23-cv-06597-CAS-MAA) against Goli Nutrition, Inc., 12416913 Canada Inc. (Predecessor 3), Deepak Agarwal, Michael Bitensky, VMG Partners Mentors Circle IV L.P., VMG Partners IV, L.P., Merical Inc., Randy Bitensky, VMG Partners, Wayne Wu, Jonathan Marshall and Roger Tyre by Sharon Hoffman and Odelya Hoffman et al., as amended (the "Hoffman v Goli Claim"), and (b) any filing of the claims asserted in the Hoffman v Goli Claim as compulsory counterclaims in the claim before the United States District Court for the Central

*District of California (case 5:23-cv-00514-GW-DTB) against Sharon Hoffman by Goli Nutrition Inc.*

[34]    ***ORDERS*** *that, notwithstanding:*

*34.1.1.  the pendency of these proceedings;*

*34.1.2.  any applications for a bankruptcy order now or hereafter issued pursuant to the Bankruptcy and Insolvency Act (Canada) (the "**BIA**") in respect of any Applicant or Residual Co. and any bankruptcy order issued pursuant to any such applications; and*

*34.1.3.  any assignment in bankruptcy made in respect of any Applicant or Residual Co.,*

*the implementation of the Transactions, including the transfer of the Excluded Assets, Excluded Liabilities, and Excluded Contracts to Residual Co. and the implementation of the Transactions under and pursuant to the Subscription Agreement, including those steps contemplated in the Steps Memo (i) shall be binding on any trustee in bankruptcy that may be appointed in respect of any Applicant or Residual Co. and shall not be void or voidable by creditors of the Applicants or Residual Co., as applicable (ii) shall not constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transactions under the BIA or any other applicable federal, provincial or territorial legislation, and (iii) shall not constitute nor be deemed to be oppressive or unfairly prejudicial conduct by any Applicant, Residual Co., the Purchaser or the Monitor pursuant to any applicable federal, provincial or territorial legislation.*

## *DISTRIBUTIONS*

[35]    ***ORDERS*** *the Monitor, at Closing, to distribute the Deposit, by wire transfer of immediately available funds to BMO, as agent for the Syndicated Lenders.*

[36]    ***ORDERS*** *the Applicants to pay the Closing Payment Amount, by wire transfer of immediately available funds to BMO, as agent for the Syndicated Lenders.*

[37]    ***ORDERS AND DECLARES*** *that the distribution and the payment contemplated in paragraphs [35] and [36] of this Order are hereby authorized and approved and that this Order shall constitute the only authorization or approval required to proceed with the distribution of the Deposit and payment of the Closing Payment Amount.*

[38]    ***ORDERS*** *that notwithstanding:*

*38.1.1.  the pendency of these proceedings;*

*38.1.2.  any applications for a bankruptcy order now or hereafter issued pursuant to the Bankruptcy and Insolvency Act (Canada) (the "**BIA**") in respect of any Applicant or Residual Co. and any bankruptcy order issued pursuant to any such applications; and*

*38.1.3.  any assignment in bankruptcy made in respect of any Applicant or Residual Co.,*

*distribution and the payment contemplated in paragraphs [35] and [36] of this Order (i) shall be binding on any trustee in bankruptcy that may be appointed in respect of any Applicant or Residual Co. and shall not be void or voidable by creditors of the Applicants or Residual Co., as applicable (ii) shall not constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transactions under the BIA or any other applicable federal, provincial or territorial legislation, and (iii) shall not constitute nor be deemed to be oppressive or unfairly prejudicial conduct by any Applicant, Residual Co., the Purchaser, the Monitor, or any other parties to these CCAA proceedings pursuant to any applicable federal, provincial or territorial legislation.*

*[39]      **DECLARES** that, in addition to any protections afforded to the Monitor under the CCAA, this Order, or any other order of the Court, the Monitor shall incur no liability whatsoever, including under any federal, provincial or foreign tax legislation, in respect of it making any of the distributions authorized by this Order.*

### *THE MONITOR*

*[40]      **ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is authorized, entitled and empowered to assign or cause to be assigned, at any time after the Closing Date, Residual Co. into bankruptcy and the Monitor shall be entitled but not obligated to act as trustee in bankruptcy of Residual Co.*

*[41]      **DECLARES** that, subject to other orders of this Court, nothing herein contained shall require the Monitor to occupy or take control, or to otherwise manage all or any part of the assets of the Applicants or Residual Co. The Monitor shall not, as a result of this Order, be deemed to be in possession of any assets of the Applicants or Residual Co. within the meaning of environmental legislation or otherwise.*

*[42]      **ORDERS AND DECLARES** that no provision of this Order is intended to appoint the Monitor, or any of its employees or representatives, as an officer, director or employee of any of the Applicants or Residual Co., de facto or*

*otherwise, or to create a fiduciary duty to any party, including any creditor or shareholder of the Applicants or Residual Co.*

[43]     **AUTHORIZES** *the Monitor, its employees and representatives, to act in accordance with the Subscription Agreement, including with respect to the administration and disbursement of any amounts held in trust pursuant thereto, and to take any actions that are necessary or useful to give effect to the Subscription Agreement and this Order.*

[44]     **DECLARES** *that without limiting any other protection afforded to the Monitor under the CCAA, this Order or any other order of the Court:*

*44.1.1.  the Monitor, as well as its employees and representatives, shall incur no liability whatsoever as a result of acting in accordance with this Order and the Subscription Agreement approved herein, other than any liability arising directly out of the gross negligence or wilful misconduct of the Monitor; and*

*44.1.2.  no action lies against the Monitor by reason of this Order or the performance of any act authorized by this Order, except by leave of the Court on ten (10) days notice to the Monitor and its counsel.*

*The entities related to the Monitor or belonging to the same group as the Monitor shall benefit from the protections arising under the present paragraph.*

**GENERAL**

[45]     **ORDERS** *that the Purchaser and the Applicants shall be authorized to take all steps as may be necessary to effect the discharge of the Encumbrances other than Permitted Encumbrances as against the assets of the Applicants.*

[46]     **DECLARES** *that this Order shall have full force and effect in all provinces and territories in Canada.*

[47]     **DECLARES** *that the Monitor shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and, without limitation to the foregoing, an order under Chapter 15 of the U.S. Bankruptcy Code, recognizing the Order. All courts and administrative bodies of all such jurisdictions are hereby respectfully requested to make such orders and to provide such assistance to Monitor as may be deemed necessary or appropriate for that purpose.*

[48]     **REQUESTS** *the aid and recognition of any court or administrative body in any province or territory of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the*

*United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.*

[49]    ***ORDERS*** *the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever.*

[50]    ***THE WHOLE WITHOUT COSTS.***

_____
MARTIN F. SHEEHAN, J.S.C.

Mtre Christian Lachance
Mtre Benjamin Jarvis
**DAVIES WARD PHILLIPS & VINEBERG LLP**
Attorneys for the Debtors

Mtre Noah Zucker
Mtre Charlotte Dion
**NORTON ROSE FULBRIGHT CANADA S.E.N.C.R.L.,S.R.L.**
Attorneys for the Monitor

Mtre Sandra Abitan
Mtre Ilia Kravtsov
**OSLER, HOSKIN & HARCOURT LLP**
Attorneys for the Lenders

Mtre Alexander Bayus
**FASKEN MARTINEAU LLC**
Attorney for the Agent

Mtre Jonathan Bashir-Legault
Attorney for the Canadian Revenue Agency

Mtre Gerry Apostolatos
**LANGLOIS LAWYERS LLP**
Attorney for Parker Group Inc.

Mtre Jonathan Bell
Mtre Pascale Dionne Bourassa
**BENNETT JONES S.E.N.C.R.L., SRL**
Attorney for the Purchasers

Mtre Nick Scheib
Attorney for Mr. Michael Betinsky

Mtre Joseph Reynaud
Mtre Maria Kunyukhova
**STIKEMAN ELLIOTT LLP**
Attorneys for VMG Partners II, LLC, Mr. Jon Marshall and Mr. Wayne Wu

Mtre Joshua Bouzaglou
Mtre Sylvain Rigaud
**WOODS LLP**
Attorneys for the Hoffman Parties

Mtre Mélanie Martel
**DLA PIPER (CANADA) LLP**
Attorneys for DLA Piper (US) LLP


Hearing date:        April 9, 2024