**Exhibit B**

| | |
|---|---|
| **CANADA** | **SUPERIOR COURT** |
| **PROVINCE OF QUÉBEC** | (Commercial Division) |
| **DISTRICT OF MONTRÉAL** | (Sitting as a court designated pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c. C-36) |
| No.: 500-11-063787-242 | IN THE MATTER OF THE COMPROMISE OR ARRANGEMENT OF: |
| | **15938759 CANADA INC. (RESIDUAL CO.)** |
| | -and- |
| | **GOLI NUTRITION INC.** |
| | Debtors |
| | **DELOITTE RESTRUCTURING INC.** |
| | Monitor/Applicant |

**APPLICATION TO TERMINATE THE CCAA PROCEEDINGS
AND DISCHARGE THE MONITOR**

**TO THE HONOURABLE JUSTICE MARTIN F. SHEEHAN OF THE SUPERIOR COURT, SITTING IN AND FOR THE COMMERCIAL DIVISION OF THE DISTRICT OF MONTRÉAL, THE APPLICANT RESPECTFULLY STATES AS FOLLOWS:**

### I. INTRODUCTION

1. By the present application (this **Application**), the Applicant/Monitor, Deloitte Restructuring Inc. (**Deloitte** or the **Monitor**), acting for and on behalf of Residual Co. and Goli Nutrition Inc. (**Goli US**, and together with Residual Co., the **Debtors**) pursuant to the initial order dated March 18, 2024 (as amended and restated on March 27, 2024 and April 11, 2024, the **Initial Order**), seeks the issuance of an order substantially in the form of the draft order communicated herewith as **Exhibit R-1** (the **Proposed Termination Order**), providing for:

    a) the termination of the present proceedings (the **CCAA Proceedings**) under the *Companies' Creditors Arrangement Act* (**CCAA**);

    b) the approval of the Monitor's activities and its discharge and release from its duties and obligations in relation to the CCAA Proceedings; and

    c) certain ancillary relief.

2. All capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Initial Order.

1

3. While, the Principal Transaction (as defined below) has been approved and implemented and has allowed for the preservation of the business (the **Business**) formerly operated by Goli Nutrition Inc. (**Goli Canada**), the Debtors no longer have the necessary funding to pursue the second phase of the restructuring initially contemplated in these CCAA Proceedings, namely with respect to the Atos Transaction (as defined below).

4. The Monitor has fully performed its duties under the CCAA and the orders of this Court to the furthest extent possible, and respectfully submits that the relief contemplated in the Proposed Termination Order is necessary and appropriate in the circumstances.

5. The Monitor has prepared a report in support of this Application (the **Third Report**), which will be notified prior to the hearing of this Application.

## II. BACKGROUND

### A. Developments in the CCAA Proceedings

6. On March 15, 2024, Goli Canada and Goli US filed an *Application for the Issuance of a First Day Initial Order, an Amended and Restated Initial Order and Other Relief, including the Approval of a Transaction and an Agency Agreement* (the **Initial Application**) seeking, *inter alia*, (i) a declaration that Goli Canada and Goli US are corporations to which the CCAA applies, (ii) a stay of all proceedings against the Goli Canada and Goli US and the Directors, for an initial period of ten days, and (iii) the appointment of Deloitte as Monitor to Goli Canada and Goli US.

7. Furthermore, Goli Canada and Goli US sought the issuance of the following orders:

    a) A reverse vesting order in respect of a transaction involving the transfer of substantially all of Goli Canada's Business and assets, other than certain manufacturing and other equipment (the **Norco Equipment**) located at its facility in Norco, California (the **Norco Facility**) and other excluded assets, to an acquisition group, which includes one of the principal shareholders of Goli Canada (the **Principal Transaction**); and

    b) An order in respect of a transaction resulting from an Agency Agreement (the **Agency Agreement**) concluded with Gordon Brothers Commercial & Industrial, LLC, on behalf of a contractual joint venture between itself and Branford Auctions, LLC, (collectively, the **Agent**) in respect of the Norco Equipment (the **Atos Transaction** and together with the Principal Transaction, the **Transactions**);

8. On March 16, 2024, the Monitor issued its first report to the Court in its capacity as proposed monitor (the **First Report**).

9. On March 18, 2024, the Court granted the Initial Application and rendered the Initial Order which provided for, *inter alia*, (i) a stay of proceedings against the Goli Canada, Goli US and the Directors until March 28, 2024; (ii) the appointment of Deloitte as the Monitor under the CCAA; (iii) the granting of the CCAA Charges; and (vi) various other relief.

10. Shortly following the commencement of the CCAA Proceedings, Goli Canada and Goli US, in consultation with Monitor and the Syndicated Lenders as well as their respective advisors, determined that the approval of the Proposed Transactions should be sought at a later date rather than at the comeback hearing, as originally contemplated in the Initial Application, and a hearing for that purpose was scheduled by the Court for April 9, 2024 (the **Transaction Approval Hearing**).

11. On March 27, 2024, the Court issued an amended and restated Initial Order, thereby extending the Stay Period until June 28, 2024.

12. On April 8, 2024, the Monitor issued its second report to the Court (the **Second Report**), the purpose of which was to provide information to the Court on the activities of the Debtors and of the Monitor since the commencement of the CCAA Proceedings and to support the Debtors' request for the issuance of the Transaction Approval Orders.

13. Late on April 8, 2024, Sharon and Odelya Hoffman and certain related entities, including Vitamin Friends LLC, RGL Management LLC, RGL Holdings LLC, and Triple 5 Nutrition LLC (collectively, the **Hoffman Parties**) filed an opposition to the issuance of the Liquidation Order, on the basis of alleged proprietary rights regarding certain equipment located at the Norco Facility, including certain of the Norco Equipment (the **Alleged RGL Equipment**).

14. On April 9, 2024, the Transaction Approval Hearing proceeded with respect to the Principal Transaction and the Court rendered an order approving and authorizing the implementation of such transaction (as rectified on April 17, 2024, the **Reverse Vesting Order**).

15. The Transaction Approval Hearing with respect to Atos Transaction was adjourned and proceeded on April 11, 2024. Despite the Hoffman Parties' objection, the Court issued that same day an order approving and authorizing the implementation of the Atos Transaction (the **Liquidation Order** and together with the Reverse Vesting Order, the **Transaction Approval Orders**) as well as a judgment providing the Court's reasons for rendering the Reverse Vesting Order and the Liquidation Order (the **Approval Judgment**).

16. Pursuant to the Approval Judgement, the Court scheduled a hearing on April 30, 2024, to adjudicate any claim the Hoffman Parties may assert with regard to the liquidation proceeds resulting form the sale of the Norco Equipment as well as

3

any related claims of the Monitor, including for the retroactive payment of expenses related to the Norco Equipment (the **Hoffman Hearing**).

17. On April 11, 2024, the Court also amended and restated the Initial Order, whereby it granted the Monitor expanded powers upon the closing of the Principal Transaction and the issuance of the Certificate (as defined in the Reverse Vesting Order).

**B.    Developments in the Chapter 15 Case**

18. On March 19, 2024, the Monitor, acting as foreign representative of Goli Canada and Goli US in accordance with the Initial Order, commenced proceedings under Chapter 15 of the *United States Bankruptcy Code* (**Chapter 15**) before the United States Bankruptcy Court for the District of Delaware (the **US Court**) seeking, *inter alia*, the recognition of the CCAA Proceedings in the United States of America (the **US**) and the approval of the Transactions (the **Chapter 15 Case**).

19. On March 21, 2024, an initial hearing was held before the US Court to obtain certain preliminary orders in the context of the Chapter 15 Case and on March 22, 2024, the US Court rendered:

    a)   a Joint Administration Order, authorizing the administration of the Goli Canada and Goli US proceedings under Chapter 15 within the same case number;

    b)   a Notice Order approving notification procedures in connection with the Chapter 15 Case; and

    c)   a Provisional Relief Order granting a stay of proceedings and other protections to Goli Canada and Goli US in the US.

20. On April 15, 2024, a hearing before the US Court took place to consider the Monitor's request to recognize and enforce the CCAA Proceedings as well as the other relief sought pursuant to the petitions filed in the Chapter 15 Case (the **Recognition Hearing**). The Monitor simultaneously sought the recognition and enforcement of the Transaction Approval Orders.

21. At the Recognition Hearing, the Hoffman Parties objected to the sale of certain of the Norco Equipment, including items that were not part of the Alleged RGL Equipment identified at the Transaction Approval Hearing, until their alleged rights in such equipment were determined and argued that the US Court rather than this Court had jurisdiction to determine such claims.

22. It is important to note that in the context of the Chapter 15 Case, the Hoffman Parties did not initially object to the sale of the Norco Equipment by the Agent, provided that the US Court retained jurisdiction to determine the allocation of proceeds based on ownership of the such equipment and that the proceeds be

kept in an account in the US. However, in a supplemental objection filed the night before the Recognition Hearing, the Hoffman Parties changed their position and fully objected to the sale until their claims were adjudicated.

23. On April 18, 2024, the US Court rendered a Bench Ruling (the **Bench Ruling**), indicating that it would it issue orders recognizing and enforcing the CCAA Proceedings and the Reverse Vesting Order in the US.

24. Pursuant to the Bench Ruling, the US Court also concluded that the ownership issue raised by the Hoffman Parties had to be determined by this Court before the US Court could grant the relief requested in connection with the Atos Transaction and that the issue should be determined at the Hoffman Hearing. As such, the US Court decided to hold the motion to recognize and enforce the Liquidation Order in abeyance until a decision on the alleged ownership rights of the Hoffman Parties is rendered.

25. That same day the Court rendered an order recognizing and enforcing the CCAA Proceedings as foreign main proceedings under Chapter 15 and giving full force and effect to the Initial Order in the US.

26. On April 22, 2024, the US Court rendered an order recognizing and enforcing the Reverse Vesting Order in the US.

### C. Closing of the Principal Transaction

27. On April 24, 2024, the closing of the Principal Transaction occurred and the Monitor issued the Certificate confirming, *inter alia*, that:

   a) The Subscription Agreement had been executed and delivered; and

   b) The Parties to the Subscription Agreement had confirmed to the Monitor that the conditions to closing set forth in the Subscription Agreement had been satisfied or waived by the parties thereto and the closing had occurred.

28. As such, Residual Co. was added as a debtor in the CCAA Proceedings and Goli Canada was removed as a debtor in the CCAA Proceedings.

29. Concurrently, upon filing of the Certificate, the Monitor was granted additional powers provided for in the Initial Order, the purpose of which were to allow the Monitor to implement the Atos Transaction, for and on behalf of Residual Co., and to complete any other matters that may have been required in the CCAA Proceedings, the whole as per the terms of the Initial Order.

### D. The inability to proceed with the Atos Transaction

30. Pursuant to the Agency Agreement, the Agent was to provide a net minimum guarantee, consisting of an up front cash payment with the balance payable

following the sale of the Norco Equipment, in a total amount of US$5,000,000 (the **Guaranteed Minimum Amount**).

31. The first installment of the Guaranteed Minimum Amount of US$3,000,000, was to be remitted by the Agent to Residual Co. (after the assignment of the Agency Agreement by Goli Canada under the Reverse Vesting Order) within two business days following the issuance of an order by the US Court recognizing and enforcing the Liquidation Order in the US.

32. As appears from the cash flow statement attached as Appendix C to the Second Report, the first installment of the Guaranteed Minimum Amount was the sole source of additional funding for the second phase of the contemplated restructuring, being that related to the implementation of the Atos Transaction.

33. Following the decision of the US Court to defer the motion to recognize and enforce the Liquidation Order until a decision on the alleged ownership rights of the Hoffman Parties was rendered, the Monitor immediately consulted with the Syndicated Lenders and the Debtors and discussions were held with the Hoffman Parties and other stakeholders with a view to identifying a mutually satisfactory solution that would allow for the immediate implementation of the Atos Transaction and the Debtors gaining access to the first installment of the Guaranteed Minimum Amount.

34. On April 19, 2024, the Hoffman Parties notified a *Motion to Determine Ownership of Property And Other Related Relief* (the **Hoffman Motion**), pursuant to which Sharon Hoffman, RGL Management LLC and Better Nutritionals LLC, alleged proprietary rights over approximately 530 items of Norco Equipment up from the 41 items identified at the Transaction Approval Hearing, as reflected in the list included as part of correspondence filed as Exhibit P-26.

35. At the same time, the Debtors continued to incur obligations, including in respect of rent for the Norco Facility, the payment of insurance and other costs associated with the preservation of the Norco Equipment, without access to the funding necessary to satisfy such obligations.

36. Given, in particular, the contested proceedings in Canada and the United States resulting from the contestation of the Hoffman Parties, the parties have also incurred professional fees that are higher than what was initially anticipated.

37. The Monitor has pursued discussions with the Syndicated Lenders, the Hoffman Parties, the Agent and other stakeholders with a view to identifying a means of gaining access to a portion of the Guaranteed Minimum Amount or finding other solutions to free up the liquidity needed to pursue the second phase of the restructuring process.

38. However, no viable solution was identified and the Monitor has now ascertained a material adverse change in the Debtors projected cash-flow and financial

circumstances, caused primarily by the impossibility to implement the Atos Transaction within the contemplated timeline, as explained in the Third Report.

39. Given the expiry of the Agency Agreement on April 19, 2024, the inability to proceed with the Atos Transaction, on the original terms or on alternative acceptable terms, and the absence of other sources of funding, the Debtors are now unable to meet their obligations as they come due or to support the costs associated with the realization of the Norco Equipment in the context of the CCAA Proceedings.

40. In such circumstances, on April 25, 2024, the Monitor advised the Court and parties on the Service List of the occurrence of the Material Adverse Change and of its intention to seek the termination of the CCAA Proceedings on April 30, 2024 and to not proceed with the adjudication of the Hoffman Parties' claims at the Hoffman Hearing.

### III. THE RELIEF SOUGHT SHOULD BE GRANTED

#### A. Termination of the CCAA Proceedings

41. As discussed in the First Report and the Second Report, the Principal Transaction allowed for the preservation of the Business for the general benefit of the stakeholders of Goli Canada and Goli US. The Principal Transaction has been implemented such that the Business will continue under new ownership and has been restructured in accordance with the remedial objectives of the CCAA.

42. Unfortunately, the second phase of the restructuring contemplated in the CCAA Proceedings, being the realization of the Norco Equipment for the benefit of the Debtors' creditors, no longer appears feasible in the context of the CCAA Proceedings, given the costs associated with maintaining such proceedings, the Debtors' existing and contemplated obligations and the absence of available interim funding.

43. As mentioned above, without receiving payment of the first installment of the Guaranteed Minimum Amount, the Debtors do not have the required liquidity to pursue the realization of the Norco Equipment in the context of the CCAA Proceedings.

44. The Monitor therefore submits that the continuation of the CCAA Proceedings is no longer viable and that the termination of the CCAA Proceedings at this time is necessary and appropriate in the circumstances.

45. Pursuant to the Proposed Termination Order, Residual Co. and Goli US will emerge from CCAA protection as of the date of the proposed order (the **CCAA Termination Date**) and the Hoffman Motion will be struck, without prejudice to the parties.

46. This will allow any parties with interests in the Norco Equipment, including the Hoffman Parties, the Syndicated Lenders, and others to exercise their rights and remedies as against Residual Co. in accordance with the ordinarily applicable procedures thus preserving the *status quo* with respect to the Norco Equipment.

### B.  Discharge of the Monitor and Release

47. The Proposed Termination Order also contemplates, *inter alia,* that effective as of the CCAA Termination Date, Deloitte Restructuring Inc. will be discharged in its capacity as Monitor, though it will continue to benefit from all protections afforded to it in that capacity by, in particular, the CCAA and the previous orders of this Court. The Monitor will also be fully released from any and all liability in any way relating to, arising out of, or in respect of the CCAA Proceedings and the Chapter 15 Case.

48. It is respectfully submitted that the Monitor has, in good faith, duly and properly discharged and performed its duties and obligations in the CCAA Proceedings in accordance with the CCAA and all of the orders of this Court made in the CCAA Proceedings.

49. Consequently, the Monitor submits that it is appropriate, fair and reasonable for the Monitor and its counsel to be released.

### C.  Termination of the Chapter 15 Case

50. The Monitor, in its capacity as foreign representative of the Debtors also intends to apply to the US Court for an order terminating the Chapter 15 Case in respect of Residual Co. and Goli US and recognizing and enforcing the Proposed Termination Order in the US, provided it is granted by this Court.

## IV.  CONCLUSION

51. For the reasons set out herein, the Monitor respectfully submits that the relief sought in this Application should be granted and an order substantially in the form of the Proposed Termination Order should be issued.

**FOR THESE REASONS, MAY IT PLEASE THE COURT:**

> **GRANT** the present *Application to Terminate the CCAA Proceedings and Discharge the Monitor* (the **Application**);

**RENDER** an order substantially in the form of the Proposed Termination Order communicated in support of the Application as Exhibit R-1.

**THE WHOLE** without legal costs, save in the event of contestation.

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*
_____

**NORTON ROSE FULBRIGHT CANADA LLP**
M<sup>tres</sup> Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

9

## AFFIDAVIT

I, the undersigned, Benoit Clouâtre, CPA, CIRP, LIT, having my professional address at 1190 avenue des Canadiens-de-Montréal, Suite 500, Montréal, province of Québec, H3B 0M7, district of Montreal, solemnly declare the following:

1. I am an authorized representative of Deloitte Restructuring Inc., acting in its capacity as court-appointed Monitor of the Debtors;

2. I have read the attached *Application to Terminate the CCAA Proceedings and Discharge the Monitor* and all facts contained therein are true.

AND I HAVE SIGNED
in Nosara, Costa Rica, on April 26, 2024

**BENOIT CLOUÂTRE**

Solemnly affirmed before me by videoconference (Teams), in Montréal and in in Nosara, Costa Rica, on April 26, 2024 allowing me to recognize Benoit Clouâtre, as well as confirm that he has signed this Affidavit. The Affidavit sent by email is true.

Commissioner of Oaths for the Province of Québec

## NOTICE OF PRESENTATION
## COMMERCIAL DIVISION

To:     **THE SERVICE LIST (See attached)**

**TAKE NOTICE** that the *Application to terminate the CCAA Proceedings and Discharge the Monitor* will be presented for adjudication before the Honorable Martin F. Sheehan, J.S.C., of the Commercial Division of the Superior Court of Québec, in **room 16.07**, of the Montréal Courthouse, on **April 30, 2024**, at **9:15 a.m.**

**DO GOVERN YOURSELF ACCORDINGLY.**

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*

**NORTON ROSE FULBRIGHT CANADA LLP**
M[tres] Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

| | |
|---|---|
| **CANADA**<br>**PROVINCE OF QUÉBEC**<br>**DISTRICT OF MONTRÉAL** | **S U P E R I O R  C O U R T**<br>(Commercial Division)<br>(Sitting as a court designated pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c. C-36) |
| No.:    500-11-063787-242 | **IN THE MATTER OF THE COMPROMISE OR ARRANGEMENT OF:**<br><br>**GOLI NUTRITION INC.**<br>-and-<br>**GOLI NUTRITION INC.**<br>Debtors<br>**DELOITTE RESTRUCTURING INC.**<br>Monitor/Applicant |

**LIST OF EXHIBITS**

---

**EXHIBIT R-1:**     Proposed Termination Order

Montréal, April 26, 2024

*Norton Rose Fulbright Canada LLP*

---
**NORTON ROSE FULBRIGHT CANADA LLP**
M^tres Noah Zucker and Charlotte Dion
**Attorneys for Deloitte Restructuring Inc.**

1 Place Ville Marie, Suite 2500
Montreal, Québec H3B 1R1
Telephone: 514.847.6076 / 514.847.4650
Fax: 514.286.5474
mailto:noah.zucker@nortonrosefulbright.com
charlotte.dion@nortonrosefulbright.com
notifications-mtl@nortonrosefulbright.com
Our reference: 1001258884

| |
|---|
| **NO.:   500-11-063787-242** |
| **SUPERIOR COURT**<br>**DISTRICT OF MONTRÉAL** |
| **In the matter of the compromise or arrangement of:**<br><br>**15938759 CANADA INC. (RESIDUAL CO.)**<br><br>and<br><br>**GOLI NUTRITION INC.**<br><br>                                              Debtors<br><br>**DELOITTE RESTRUCTURING INC.**<br><br>                                              Monitor/Applicant |
| **APPLICATION TO TERMINATE THE CCAA PROCEEDINGS AND DISCHARGE THE MONITOR** |
| **ORIGINAL** |
| **Erreur ! Insertion automatique non définie. #** 1001258884<br><br>**M<sup>tres</sup> Noah Zucker, Charlotte Dion**<br>**NORTON ROSE FULBRIGHT CANADA** LLP<br>BARRISTERS & SOLICITORS<br><br>1 Place Ville Marie, Suite 2500<br>Montréal, Quebec  H3B 1R1<br>Telephone: 514.847.4747<br>Fax: 514.286.5474<br><br>noah.zucker@nortonrosefulbright.com<br>charlotte.dion@nortonrosefulbright.com<br>Notifications-mtl@nortonrosefulbright.com |